## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

|  |  |
|---|---|
| **CARRIE B.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No. 2:22cv393** |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carrie B. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the Social Security Act. ECF No. 1. On February 21, 2023, the parties consented to the jurisdiction of the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(c)(1), and Federal Rule of Civil Procedure 73. ECF No 22.

Presently before the Court are the parties' cross Motions for Summary Judgment, ECF Nos. 16, 19. After reviewing the briefs, the undersigned issues this opinion without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 16, **GRANTS** the Commissioner's Motion for Summary Judgment, ECF No. 19, and **ORDERS** the final decision of the Commissioner be **AFFIRMED** and this case be **DISMISSED WITH PREJUDICE.**

# I. PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on December 12, 2019, alleging disability due to major depressive disorder, generalized anxiety disorder, and Hepatitis C.  R. at 54–55.[1]  Plaintiff's applications were initially denied on September 21, 2020, and again denied upon reconsideration on March 15, 2021.  R. at 72–75, 82.  On March 31, 2021, Plaintiff requested a hearing before an administrative law judge.  R. at 116.

A hearing was held on December 6, 2021, at which Plaintiff appeared with counsel before Administrative Law Judge Mary Ann Poulose ("the ALJ").  R. at 34–53.  Both Plaintiff and an impartial vocational expert testified at the hearing.  R. at 39–52.  On January 28, 2022 the ALJ issued a decision finding Plaintiff not disabled.  R. at 16–26.  Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on July 22, 2022, making the ALJ's decision the final decision of the Commissioner.  R. at 1–7.

Having exhausted her administrative remedies, on September 19, 2022, Plaintiff filed a Complaint for judicial review of the Commissioner's decision.  ECF No. 1.  On December 30, 2022, Plaintiff filed a Motion for Summary Judgment and accompanying memorandum in support.  ECF Nos. 16–17.  On January 29, 2023, the Commissioner filed a Motion for Summary Judgment and memorandum in support.  ECF Nos. 19–20.  Plaintiff filed a reply on February 9, 2023.  ECF No. 21.  Because the motions are fully briefed, the matter is now ripe for recommended disposition.

# II. RELEVANT FACTUAL BACKGROUND

The Record included the following factual background for the ALJ to review:

Plaintiff was forty-six years old at the time of her alleged disability onset date of June 1, 2013.  R. at 54.  Plaintiff lives with her friend in a hotel room.  R. at 48.  Plaintiff graduated from

---

[1] "R." refers to the certified administrative record that was filed under seal on December 1, 2022.  ECF No. 13, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

high school and her medical records report she attended vocational college and obtained a degree in commercial art. R. at 39, 502. Plaintiff previously worked as a dog groomer and at Quizno's. R. at 40–42.

## A. Plaintiff's Medical Records Relevant to Alleged Mental Impairments[2]

Plaintiff has severe major depressive disorder, dysthymic disorder, alcohol use disorder, and anxiety. R. at 502, 504, 501, 438. Plaintiff's medical records show appointments at Bon Secours Greenbrier Medical Associates, Chesapeake Regional Medical Center, Maryview Medical Center, and Chesapeake Regional Primary Care from 2013 up until 2021. R. at 396–507, 627–744. Plaintiff has had therapy to treat her mental impairments. R. at 500.

Plaintiff has been prescribed a variety of medication for her mental impairments, including: Amitriptyline (Elavil) for depression, Zoloft for depression, Trazodone (Desyrel) for sleep, Wellbutrin for depression, Vistaril and Ativan for anxiety, and a Librium-based alcohol detox protocol and Antabuse for alcoholism. R. at 425, 442, 500, 502–04. Plaintiff's medical records include appointments to have her medication refilled. R. at 396, 425, 432. In January 2015, Plaintiff reported taking medication "helped some" and medication "help[s] [her] function better." R. at 502. A medical note from an appointment in January 2015 reports "[a]lthough [Plaintiff] describes anhedonia, [she] apparently, from her description, appears to be generally functional." R. at 501. A medical note from an appointment in December 2018 reports Plaintiff stopped taking medications for her mental health impairments because she ran out, Plaintiff reported "she did well on previous medications that she was taking and would like to restart[,]" Plaintiff was prescribed more medication, and Plaintiff was given a referral for psychiatric services. R. at 436–37. At a medical appointment in February 2019, the notes report Plaintiff takes psychotherapeutic

---

[2] Because Plaintiff's physical impairments are not at issue, the Court does not address Plaintiff's medical records relating to her physical impairments.

medications.  R. at 433.  At a medical appointment in July 2019, it was noted Plaintiff takes medication for her mental impairments.  R. at 429.  A note from a medical appointment in September 2021 reported the same.  R. at 628.

Plaintiff experienced suicidal ideations and attempted suicide.  R. at 495, 491, 504, 502, 503, 501.  On January 23, 2015, Plaintiff went to the emergency room after expressing suicidal ideations and planning to "take a gun to [her] head."  R. at 495.  On February 10, 2015, Plaintiff went to the emergency room with suicidal ideations and plans to shoot herself with a gun.  R. at 491.  Plaintiff reported she previously attempted to overdose twice.  R. at 491.  Plaintiff's mental impairment symptoms also included feeling overwhelmed, hopeless, poor appetite, anhedonia, terrible sleep, difficulty concentrating at work and competing required tasks, and Plaintiff consistently reported feeling stressed because of her finances, her living situation, and her relationships.  R. at 396, 398, 426, 493.  Additionally, Plaintiff experienced an instance of fidgeting, fast speech, and itching, which was possibly a psychological symptom.  R. at 431.

Plaintiff was scheduled to have a telephonic psychological consultative examination in June 2020 with Karen Armstrong, Ph.D., but Plaintiff did not keep her appointment because she "did not successfully log into [Armstrong's] system."  R. at 625.

On a Disability Report form completed in February 2020, Plaintiff reported she has major depressive disorder, generalized anxiety disorder, and hepatitis C.  R. at 258.  Plaintiff reported Kacie Schappert, PA-C, with Chesapeake Regional Primary Care, prescribed her Elavil for her major depressive disorder and Trazodone for her generalized anxiety disorder.  R. at 260.  On a function report from May 2020, Plaintiff reported she has severe clinical depression, profound sadness/distress, and profound dread/confusion/cry a lot.  R. at 270.  Plaintiff reported she takes her medication when she gets in bed.  R. at 270.  Plaintiff reported she does not sleep long, has

4

issues with sleep, her life/brain never shut down, she has nightmares/night sweats, and she has no interest in life at all.   R. at 270.   Plaintiff also reported she likes to be alone, cannot concentrate/focus, cannot be around others, gets along with others but does not want to be around anyone, and fears a lot of life changes.  R. at 276–77.  Plaintiff reported she takes Elavil for her depression and Trazodone for her sleep.  R. at 278.

## B. Relevant Mental Evaluations Completed by State Agency Examiners

At the initial level, Nicole Sampson, Ph.D., reviewed Plaintiff's medical records.  R. at 63–71.  Sampson found Plaintiff's depression and anxiety are severe and her substance abuse disorder is non-severe.  R. at 69.  Sampson also noted Plaintiff has a history of depression, anxiety, and alcohol abuse.  R. at 70.  Sampson opined there was insufficient evidence to evaluate Plaintiff's claim.  R. at 69–70.  Sampson noted Plaintiff's medical records showed her last mental status exam was in September 2019 and that Plaintiff failed to attend two consultative exams.  R. at 70. Accordingly, at the initial level Plaintiff was found not disabled because she did not furnish evidence to support her claim, despite requests to do so.  R. at 71.

At the reconsideration level, Leslie Montgomery, Ph.D., reviewed Plaintiff's medical records.   R. at 77–81.   Montgomery found Plaintiff's depression and anxiety are severe impairments.  R. at 79.  Montgomery opined there was insufficient evidence to evaluate Plaintiff's claim.  R. at 79–80.  Montgomery noted Plaintiff and her representative had not responded to requests to provide updated records and did not return forms.  R. at 86.

## C. Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff testified about her education and work experience.  R. at 39–42.  Plaintiff graduated from high school.  R. at 39.  Plaintiff's work history mostly includes part-time work, and she last worked in 2021 as a dog groomer for three or four hours a day, but lost her

job because of COVID-19. R. at 39–42. Plaintiff also previously worked as a dog groomer at Dog House and Kittens, Too, Canine Cloud Nine, Paws & Purrs, Animal Adventure, and Canine Design, dating back to 2009. R. at 40–41. Plaintiff worked as a full-time dog groomer at Noah's Ark Pet Grooming in 2009 and full-time at Quizno's in 2008. R. at 41–42.

As to her daily life, Plaintiff does not have a driver's license, and when she was working she depended on the bus or friends to get to work. R. at 42, 46. Plaintiff cleans, cooks, and grocery shops. R. at 42–44. Plaintiff watches TV and listens to music, but does not read because it is hard for her to concentrate. R. at 43. Plaintiff does not visit with others, attend religious services, or attend organizations or clubs, but does not have problems getting along with others. R. at 43, 46.

Plaintiff has depression, "a touch of OCD," and has trouble sleeping. R. at 42, 47. Plaintiff normally takes anti-depressants, but lost her health insurance and was waiting for Medicaid at the time of the ALJ hearing. R. at 44. Plaintiff's medication helps her with concentration and not feeling emotional and overwhelmed, and she also has monthly counseling appointments for mental health treatment. R. at 44–46. Plaintiff was hospitalized for suicidal thoughts in 2018. R. at 45.

**D. Relevant Vocational Assessment**

Vocational Expert ("VE") James Radke testified at the hearing in response to the ALJ's hypothetical question that, consistent with the Dictionary of Occupational Titles and his own experience, jobs existed in the national economy for a high school educated person who was "limited to unskilled work that was simple, repetitive, routine, had only occasional public and co-worker interaction, no fast-paced, production line work, and minimal changes in work routine or setting." R. 50-51. Those jobs included dishwasher, kitchen helper, and order picker.[3] R. 50-51. After the hearing, on December 13, 2021, Heather Fahey, MSW, Employment Specialist,

---

[3] In her decision the ALJ listed these same jobs, based on the DOT number, as Kitchen Helper, Hospital Cleaner, and Store Laborer. R. 51.

completed a vocational assessment at the request of Plaintiff's representative.[4]   R. at 384–86.

Fahey opined Plaintiff would be precluded from working as a kitchen helper, hospital cleaner, and

store laborer. R. at 384–86. Fahey opined "the limitation to occasional interaction with coworkers

is work preclusive." R. at 384.

### III. THE ALJ'S DECISION

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential

evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th

Cir. 2015) (summarizing the five-step sequential evaluation).  At step one, the ALJ considers

whether the claimant has worked since the alleged onset date, and if so, whether that work

constitutes substantial gainful activity.  §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the

ALJ considers whether the claimant has a severe physical or mental impairment that meets the

duration requirement. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step three, the ALJ determines

whether the claimant has an impairment that meets or equals the severity of a listed impairment

set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant does not have an impairment that meets or equals the severity of a listed impairment,

the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant

can do despite her impairments.  §§ 404.1545(a), 416.945(a).  At step four, the ALJ considers

whether the claimant can still perform past relevant work given his or her residual functional

capacity.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Finally, at step five, the ALJ considers

whether the claimant can perform other work.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial

gainful activity at step one; they do not have any severe impairments at step two; or if the claimant

---

[4] *See* n.6, *infra.*

can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of June 1, 2013. R. at 18–19. The ALJ noted Plaintiff met the insured status requirements of the Social Security Act through June 30, 2018 because she worked after her alleged disability onset date, but her work activity did not rise to the level of substantial gainful activity. R. at 19. At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder and dysthymic disorder. R. at 19. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1. R. at 19–21.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels, but with the following nonexertional limitations: Plaintiff is capable of unskilled, repetitive tasks, with occasional public interaction." R. at 21. In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR [§] 404.1529 and 416.929 and SSR 16-3p." R. at 21.

8

At step four, the ALJ determined that Plaintiff has no past relevant work. R. at 24. The ALJ also noted transferability of job skills "is not an issue because [Plaintiff] does not have past relevant work." R. at 24. The ALJ found "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform." R. at 24. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date, June 1, 2013, through the date of her decision, January 28, 2022. R. at 25–26.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "'evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Britt v. Saul*, 860 F. App'x 256, 260 (4th Cir. 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that

decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Id.* (quoting

*Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).  Accordingly, if the Commissioner's denial

of benefits is supported by substantial evidence and applies the correct legal standard, the Court

must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises two challenges to the ALJ's decision.  Plaintiff alleges

that the ALJ erred by: first, failing to develop the record and therefore the RFC is not supported

by substantial evidence, and second, failing to explain why the limitations found in Plaintiff's

psychiatric review technique were not accounted for within the RFC.  ECF No. 17 at 4–14.  The

undersigned addresses each argument in turn.

### A. The ALJ did not fail to develop the record and the RFC is supported by substantial evidence.

Plaintiff argues the ALJ failed to develop the record because there was not enough

information to craft the RFC, and there were significant gaps in the medical record.  ECF No. 17

at 4–9; ECF No. 21 at 1–3.  Specifically, Plaintiff argues "the record contains multiple gaps in

Plaintiff's treatment that cannot be filled by the ALJ's speculation or conjecture[,]" ECF No. 17

at 6, and "[t]his case is woefully underdeveloped," ECF No. 21 at 3.  Plaintiff claims "[t]he ALJ

made speculative and conclusory statements to support her denial of Plaintiff's benefits without

having the benefit of any medical evidence or opinion to support those speculative statements."

ECF No. 17 at 6.  For example, Plaintiff claims the ALJ's finding Plaintiff running out of

medication suggested Plaintiff's symptoms were controlled with regular medication use was not

supported by evidence in the record.  *Id.* at 6–7.  Plaintiff also argues the ALJ may not have

considered some evidence in the record, such as Plaintiff's PHQ-9 score of 23, which indicates

severe major depression.  *Id.* at 7.  Additionally, Plaintiff claims "the ALJ crafted an RFC out of

thin air and failed to explain *how* objective findings and subjective complaints equate to the limitations contained in the RFC." *Id.* Finally, Plaintiff argues the ALJ should have ordered another psychological consultative examination or provided a medical expert at the hearing. *Id.* at 8. Plaintiff argues an exam or medical professional may have discovered limitations or provided guidance about limitations and would have changed the ALJ's decision. *Id.* at 8–9.

The Commissioner did not address Plaintiff's argument that the ALJ failed to develop the record.

When there is "insufficient evidence to determine whether an individual has a medically determinable impairment that could potentially account for his or her alleged symptoms" then it may be appropriate to "develop evidence[.]" SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). ALJs have a duty to "explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the [plaintiff] when the evidence is inadequate[.]" *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty to develop the record is "triggered when there is insufficient or inconsistent evidence." *Gregory v. Saul*, No. 3:19cv84, 2019 WL 5280968, at *8 (E.D. Va. Sept. 3, 2019), *report and recommendation adopted*, No. 3:19cv84, 2019 WL 5269099 (E.D. Va. Oct. 17, 2019). When an ALJ fails to adequately develop the record and this failure results in prejudice or unfairness to the plaintiff, then remand is warranted. *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980). To show prejudice, a plaintiff "must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" *Ashley L.R. v. Kijakazi*, No. 3:21cv678, 2022 WL 3643372, at *4 (E.D. Va. July 11, 2022) (citing *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)), *report and recommendation adopted*, No. 3:21cv678, 2022 WL 3635466 (E.D. Va. Aug. 23, 2022). However, plaintiffs cannot make unsupported allegations that ALJs should have further developed the record,

they must be more specific for example by highlighting additional medical records in existence. *Seemia Y.S. v. Kijakazi*, No. 3:20cv745, 2022 WL 722314, at *5 (E.D. Va. Jan. 27, 2022), *report and recommendation adopted*, No. 3:20cv745, 2022 WL 710172 (E.D. Va. Mar. 9, 2022).

Importantly though, plaintiffs "are in a better position to provide information about [their] own medical condition[s]." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (explaining the allocation of burdens of proof in Social Security cases). "'[T]he ALJ is not required to function as the [plaintiff's] substitute counsel, but only to develop a reasonably complete record.'" *Gregory*, No. 3:19cv84, 2019 WL 5280968, at *8 (quoting *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994)). Furthermore, the ALJ also does not have a duty to "'go to inordinate lengths to develop a [plaintiff's] case.'" *Gregory*, No. 3:19cv84, 2019 WL 5280968, at *8 (quoting *Thompson v. Califano*, 556 F.2d 616, 618 (1st Cir. 1977)).

ALJs may order consultative exams and have the discretion to decide whether one is necessary. 20 C.F.R §§ 404.1519a, 416.919a; *Cooke v. Berryhill*, 767 F. App'x 539, 540 (4th Cir. 2019) (citing *Sims v. Apfel*, 224 F.3d 380, 381–82 (5th Cir. 2000)) ("[W]hether to order a consultative examination lies within the ALJ's discretion."). "[T]he decision to order a consultative examination is committed to the discretion of the ALJ, and where the record as a whole provides sufficient, unambiguous, and non-conflicting evidence to support the ALJ's decision, a consultative examination is not required." *Zook v. Comm'r of Soc. Sec.*, No. 2:09cv109, 2010 WL 1039456, at *6 (E.D. Va. Feb. 25, 2010) (citation omitted), *report and recommendation adopted*, No. 2:09cv109, 2010 WL 1039830 (E.D. Va. Mar. 18, 2010).

For example, this Court found an ALJ did not err when deciding not to order a psychological consultative examination. *Gregory*, No. 3:19cv84, 2019 WL 5280968, at *8. In *Gregory*, despite state agency consultants opining there was insufficient evidence to evaluate the

plaintiff's claim and the medical record containing only two medical appointments during the relevant period, the evidence, as a whole, was sufficient to make a disability determination. *Id.* at *8–9. The evidence included Plaintiff's treating psychiatrist reports that the plaintiff was stable or in partial remission and Plaintiff's reports that she was doing well and was able to work. *Id.* This Court also explained the plaintiff's testimony that she was able to prepare meals, make her own appointments, watch movies, listen to music, maintain relationships, use social media, and shop "support[ed] the ALJ's findings that [the plaintiff] retained the capacity to maintain at least some degree of concentration and interaction with others." *Id.* at *9.

Here, the ALJ found Plaintiff has a moderate limitation "in interacting with others" and in "concentrating, persisting, or maintaining pace." R. at 20. The ALJ also found Plaintiff has a mild limitation in understanding, remembering, or applying information and in adapting or managing oneself. R. at 20. The ALJ provides multiple explanations with citations to the record in making these determinations about Plaintiff's limitations. R. at 20. In determining Plaintiff's moderate limitation in interacting with others, the ALJ cited Plaintiff's demeanor at some appointments, including her blunt affect, poor eye contact, tearfulness, anxious mood, and being withdrawn, and suicidal ideations. R. at 20 (citing R. at 406–08, 491–95, 752–59). The ALJ also cited Plaintiff's ability to interact with others, including her attending a party, and her testimony that she was able to live with a roommate without significant issues. R. at 20 (citing R. at 48, 467–89).

In determining Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace, the ALJ cited Plaintiff's demeanor at some appointments, including her poor eye contact, tearfulness, anxious mood, agitated state, and disordered thought content. R. at 20 (citing R. at 396–400, 752–59). The ALJ also cited Plaintiff's subsequent normal cognition and memory, despite her anxious and withdrawn mood. R. at 20 (citing R. at 406–08).

In determining Plaintiff's mild limitation in understanding, remembering, or applying information, the ALJ cited Plaintiff's demeanor during hospitalization, including her poor eye contact and being slow and vague while answering questions. R. at 20 (citing R. at 495–504). The ALJ also cited Plaintiff's normal thought content, speech, and behavior, Plaintiff's ability to relay information about her medical treatment, daily living activities, and past relevant work, and Plaintiff's normal memory, mood, and affect. R. at 20 (citing R. at 39–50, 401–05, 491–95).

In determining Plaintiff's mild limitation in adapting or managing oneself, the ALJ cited Plaintiff's testimony that she can attend to her personal care needs independently and assist with household chores regularly. R. at 20 (citing R. at 42–44). The ALJ also cites to some evidence that Plaintiff occasionally ran out of her medication and that Plaintiff also testified she stopped taking medication due to insurance issues. R. at 20 (citing R. at 44, 396–400, 406–08).

Furthermore, the ALJ determined Plaintiff has the RFC to perform a full range of work at all exertional levels, with a limitation of being capable of unskilled, repetitive tasks, with occasional public interaction. R. at 21. The ALJ considered the full medical record and thoroughly explains how she came to her decision. R. at 22–23. The ALJ explains that based on the medical record she finds Plaintiff's symptoms improve when she is not experiencing suicidal ideation, that Plaintiff is able to socialize as she attended a party, that Plaintiff's symptoms are well controlled with regular medication use because Plaintiff consistently took her medication, and that Plaintiff "is capable of a certain level of mental prowess [and] motivation necessary for certain types of work" based on her ability to testify about her medical treatment, work history, and activities of daily living. R. at 22–23.

Here, the record provided sufficient evidence for the ALJ to determine whether Plaintiff was disabled without requiring the ALJ to further develop the record. The ALJ provided a

thorough review of the medical record and analysis of Plaintiff's impairments, and sufficiently explained her RFC determination, having considered evidence that includes Plaintiff's medical records from 2013 to 2021 and Plaintiff's testimony. R. at 20–23. As aforementioned, the ALJ supported each determination with multiple citations to the record and an explanation as to how she came to her decision. R. at 20–23. The ALJ also exercised her discretion in not ordering a consultative exam and did not err in deciding not to do so. Similar to *Gregory*, there is sufficient evidence in Plaintiff's medical record to support the ALJ's decision and determination to not order a consultative examination.

The undersigned also notes Plaintiff missed the opportunity to have a consultative examination done, did not provide additional medical evidence, and, importantly, failed to explain in her brief how the ALJ's decision might have been changed by further development of the record. *Seemia Y.S.*, No. 3:20cv745, 2022 WL 722314, at *5. The Plaintiff merely argues the ALJ needed to order a consultative exam or consult another medical source because "limitations *may* have been discovered" and it "*may* have provided guidance regarding Plaintiff's limitations . . . ." ECF No. 17 at 8 (emphasis added). Plaintiff does not point to any additional medical records for the ALJ to obtain, does not articulate what limitations or guidance may have been gleaned that was not already in the medical record, and does not specifically argue what evidence would have affected the ALJ's decision. This is vague speculation and not specific enough to demonstrate prejudice.

Therefore, the ALJ did not fail to develop the record and the RFC is supported by substantial evidence.

**B. The ALJ sufficiently explained the limitations found in Plaintiff's psychiatric review technique within the RFC, and any omission was harmless error.**

Plaintiff contends the ALJ failed to explain why the limitations found in the psychiatric review technique were not accounted for within the RFC. ECF No. 17 at 9–14; ECF No. 21 at 4–

5. Specifically, Plaintiff argues the ALJ's RFC determination that Plaintiff is capable of occasional public interaction is inconsistent with her finding that Plaintiff has a moderate limitation in interacting with others, and her omission of any reference to the applicability of the limitation with respect to interaction with coworkers, as opposed to the public, was error. ECF No. 17 at 10–11. Plaintiff also argues the ALJ did not provide an explanation for how limiting Plaintiff to unskilled, repetitive tasks accounts for the ALJ finding that Plaintiff has a moderate limitation in concentration, persistence, and pace. *Id.* at 12–13.

In response, the Commissioner argues the ALJ's RFC is supported by substantial evidence. ECF No. 20 at 8–12. The Commissioner argues the ALJ "fully accounted for Plaintiff's mental functional limitations in a detailed RFC assessment[,]" including her moderate limitations in interacting with others and in concentration, persistence, or pace. *Id.* The Commissioner cites to the ALJ's various findings and discussion of the medical record in determining the RFC and case law from this Circuit to argue the ALJ's decision is supported by substantial evidence. *Id.*

After step three of the sequential analysis, the ALJ must determine the claimant's RFC. § 404.1520(a)(4). RFC is defined as "the most" a claimant "can still do despite [his or her] limitations." § 404.1545(a)(1). In making the RFC determination, the ALJ must consider "all of the relevant medical and other evidence" in the record and incorporate any impairments supported by objective medical evidence, and those impairments based on the claimant's credible complaints. § 404.1545(a)(3). In determining the claimant's RFC, the ALJ must "'identify the individual's functional limitations'" and then assess the individual's "'work-related abilities on a function-by-function basis,'" including the claimant's physical abilities, mental abilities, and any other work-related abilities affected by his or her impairments. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing SSR 96-8p, 1996 WL 362207, at *34475 (July 2, 1996)). The ALJ must include a

"'narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Mascio*, 780 F.3d at 636 (citing SSR 96-8p, 1996 WL 362207, at *34474 (July 2, 1996). The ALJ also must "'build an accurate and logical bridge from the evidence to [the ALJ's] conclusion'" in order to allow the reviewing court to evaluate the ALJ's decision. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

Despite Plaintiff's argument, district courts in the Fourth Circuit have found that RFC restrictions that limit plaintiffs to occasional interaction with others do accommodate for a moderate limitation in social interaction. *See, e.g., Crisco v. Kijakazi*, No. 1:20cv239, 2021 WL 4414155, at *7 (M.D.N.C. Sept. 27, 2021); Corvin *v. Berryhill*, No. 5:17cv92, 2018 WL 4677887, at *3 (W.D.N.C. Feb. 7, 2018), *report and recommendation adopted*, No. 5:17cv92, 2018 WL 3738226 (W.D.N.C. Aug. 7, 2018); *Darby v. Berryhill*, No. 1:16cv366, 2018 WL 310136, at *7 (W.D.N.C. Jan. 5, 2018); *Tanner v. Colvin*, No. 4:15cv27, 2016 WL 626493, at *10 (E.D.N.C. Jan. 26, 2016), *report and recommendation adopted*, No. 4:15cv27, 2016 WL 617431 (Feb. 16, 2016).

Furthermore, there is no absolute rule about how an RFC should account for a plaintiff's functional limitations or that a finding of a moderate impairment at step two or three requires a limitation in the RFC. *See Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020); *Joetta G. v. Kijakazi*, No. 4:20cv133, 2021 WL 8086712, at *10 (E.D. Va. Aug. 6, 2021) ("There is no per se rule regarding how the RFC needs to accommodate particular functional limitations."), *report and recommendation adopted*, No. 4:20cv133, 2021 WL 4130514 (E.D. Va. Sept. 8, 2021). If the ALJ determines a moderate limitation does not affect the plaintiff's ability to work, then the ALJ may

omit the limitation from the RFC so long as the ALJ sufficiently explains the analysis. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (explaining a moderate limitation in concentration, persistence, or pace at step three does not have to translate into a limitation in the RFC if the ALJ provides an explanation).

Here, as aforementioned, the ALJ found Plaintiff has a moderate limitation in interacting with others and concentrating, persisting, or maintaining pace. R. at 20. The ALJ provides multiple explanations with citations to the record in making these determinations about Plaintiff's limitations and in making her RFC determination. R. at 20–23. First, the ALJ did account for Plaintiff's moderate impairment in interacting with others by limiting Plaintiff to only occasional public interaction. R. at 21–23. As other courts in the Fourth Circuit suggest, this is sufficient to account for Plaintiff's limitation. The record shows Plaintiff is able to live with a roommate, has friends, and that Plaintiff does not have trouble getting along with friends, family, or neighbors. R. at 46, 48. Therefore, the ALJ sufficiently explained her reasoning and created an accurate and logical bridge from the evidence in the medical record detailing Plaintiff's social limitations and the RFC.

Second, with respect to Plaintiff's argument that the ALJ erred by not including in her decision a reference to the applicability of the moderate limitation with respect to interaction with coworkers and supervisors (as opposed to just the public), any such error should be considered harmless. In evaluating whether ALJs make an error of law in Social Security disability determinations, the Fourth Circuit uses a harmless error analysis. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015). "The harmless error doctrine prevents a remand when the ALJ's decision is 'overwhelmingly supported by the record though the agency's original opinion failed to marshal that support' and a remand would be 'a waste of time.'" *Williams v. Berryhill*, No. 1:17cv167,

2018 WL 851259, at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 F.

App'x 65, 67 (4th Cir. 2014) (per curium)), *report and recommendation adopted*, No. 1:17cv167,

2018 WL 1164938 (E.D. Va. Feb. 13, 2018). An ALJ's error can be considered harmless when a

court, based on the ALJ's entire opinion, determines that the error did not substantively prejudice

the plaintiff. *Lee v. Colvin*, No. 2:16cv61, 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016),

*report and recommendation adopted*, No. 2:16cv61, 2016 WL 7404698 (E.D. Va. Dec. 21, 2016).

When reviewing a decision for harmless error, courts must look at "'[a]n estimation of the

likelihood that the result would have been different.'" *Morton-Thompson v. Colvin*, No.

3:14cv179, 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556

U.S. 396, 411–12 (2009)), *report and recommendation adopted*, No. 3:14cv179, 2015 WL

5561211 (E.D. Va. Sept. 14, 2015). "The burden establishing that the error was harmful rests on

'the party attacking the agency's determination.'" *Bisceglia v. Colvin*, 173 F.Supp.3d 326, 333

(E.D. Va. 2016) (citing *Shinseki*, 556 U.S. at 409). If "the circumstances of the case show a

likelihood of prejudice, [then harmless error does not apply and] remand is appropriate so that the

agency can decide whether consideration is necessary." *Id.* (citing *McLeod v. Astrue*, 640 F.3d

881, 888 (9th Cir. 2010)).

        Here, in fact, after finding in her decision that Plaintiff had a moderate limitation in

interacting with others, the ALJ only applied the limitation to interaction with the public, and not

to coworkers or supervisors in the RFC. While Plaintiff argues that this leaves a gap in the "logical

bridge" between the evidence and the RFC finding, the Court must find that the gap need not be

filled by remanding this case for further findings by the ALJ. This is so because the ALJ, in her

hypothetical to the VE, specifically posited in her question a person who can have only "occasional

public *and coworker* interaction" in eliciting a response as to what jobs were available. R. at 51.

The VE then identified three jobs available to a person with that moderate limitation. Hence, although she did not include the terms "coworker" or "supervisor" in her written RFC, such an omission constitutes harmless error. By her hypothetical the ALJ clearly contemplated that the limitation would apply to interactions with both the public and coworkers or supervisors,[5] and if required to revisit this question on remand, would undoubtedly come to the same conclusion.[6]

Finally, the ALJ complied with the requirements from *Mascio*. The ALJ thoroughly explained her RFC determination and how she accounted for Plaintiff's moderate limitation in concentration, persistence, and pace. R. at 21–23. By relying on the record to explain the basis for her finding of moderate limitation in concentration, persistence and pace, and her resulting conclusions about what limitations in the RFC were necessary—limiting Plaintiff to unskilled, repetitive tasks with occasional public interaction–the ALJ provided a sufficient basis for those conclusions. The ALJ was not obligated to create an RFC limitation so long as the ALJ explained how she came to her decision, which she did.

Accordingly, the ALJ sufficiently accounted for Plaintiff's limitations in the RFC and otherwise provided sufficient explanation as to why any further RFC limitation was unnecessary. As a result, substantial evidence supported the ALJ's findings, and she did not err in this regard.

---

[5] Nothing in the record suggests Plaintiff's moderate limitation in interacting with others differs based on whether the interaction is with "the public," "coworkers," or "supervisors." Plaintiff's moderate limitation was described by the ALJ was manifested in arenas outside of the workplace, and nothing in the record or advanced by Plaintiff suggests such a distinction between coworkers and supervisors conceivably could be found on remand. Indeed, even Plaintiff's employment specialist did not make any such distinction. *See* n.6.

[6] Although Plaintiff proffered the opinion of employment specialist Heather Fahey that "the limitation to occasional interaction with coworkers is work preclusive," VE Radke obviously disagreed by providing a list of jobs that took that limitation into account. His opinion constitutes substantial evidence supporting the ALJ's decision, even if a contrary opinion is in the record, especially when the ALJ went to some lengths to explain why she found VE Radke's opinion credible when challenged by Plaintiff's counsel following the hearing. R. at 25, 362–64.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's Motion for Summary Judgment, ECF No. 19, is **GRANTED**, the Plaintiff's Motion for Summary Judgment, ECF No. 16, is **DENIED**, the final decision of the Commissioner is **AFFIRMED**, and this case is **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to the counsel of record for Plaintiff and the Commissioner.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
August 10, 2023